**SO ORDERED.**

**SIGNED this 28 day of November, 2012.**



_____
**James D. Walker, Jr.
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 12-10094-JDW |
| ROBERT MASON BEAUCHAMP, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| AB&T NATIONAL BANK, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 12-1007 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| MOSSY DELL, INC. | ) | |
| | ) | |
| DEFENDANT, | ) | |
| | ) | |
| and PAUL CAMES, Chapter 7 Trustee, | ) | |
| | ) | |
| INTERVENOR-DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

| | |
|---|---|
| For Plaintiff: | C. Richard Langley<br>Post Office Box 607<br>Albany, Georgia 31702-0607 |
| For Defendant Mossy Dell: | Richard E. Flowers<br>Post Office Box 2571<br>Columbus, Georgia 31902 |
| | W. Edward Meeks, Jr.<br>Post Office Box 720<br>Leesburg, Georgia 31763 |
| For Intervenor-Defendant<br>Paul Cames: | Paul Cames<br>Post Office Box 8499<br>Warner Robins, Georgia 31095 |
| For Debtor: | F. Anthony Blakey<br>Post Office Box 70879<br>Albany, Georgia 31708 |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's complaint to determine ownership of stock certificates, and cross motions for summary judgment. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A), (O).[1] After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Background and Undisputed Facts**

Debtor Robert Beauchamp's grandparents, Flora and Robert Lee, accumulated significant assets, which were held in a family corporation known as Flo-Rob, Inc. All stock in the corporation was owned by two branches of the family–the Leaches and the Beauchamps–and by trusts created for the families' benefit. In 2009, to resolve a family dispute, the assets of Flo-Rob were divided between Flo-Rob and a newly created corporation called Mossy Dell, Inc. The Leach family retained control of Flo-Rob, while the Beauchamp family (Debtor's family) controlled Mossy Dell. Debtor received 4,000 shares of Mossy Dell stock.

Mossy Dell was incorporated on July 15, 2009. According to its Articles of Incorporation, Mossy Dell "is a corporation for profit and is organized for all lawful purposes. The corporation shall have the powers to own and lease real property, to invest in any type of investment whatsoever and to conduct any trade or business or activities allowed under the laws of the State of Georgia." (AB&T's motion for summary judgment, Exhibit A, p.35 ¶ 3, docket #19.) The

---

[1] The underlying issue in this case is whether Debtor was the rightful owner of certain shares of stock on the petition date, such that those shares are property of the estate under 11 U.S.C. § 541. Although the outcome of this case is dependent on state law, jurisdiction is appropriate because the determination of whether property is property of the estate is a "proceeding[] arising under title 11." 28 U.S.C. § 157(b)(1).

Articles of Incorporation also set forth a restriction on the transfer of Mossy Dell shares as follows:

> The shares of the corporation may only be transferred to lineal descendants of Flora S. Lee and her husband, Robert Lee, both of whom are deceased .... Their children are Barbara L. Beauchamp and Adelaide L. Smith. This corporation is being formed as part of a split up of Flo-Rob, Inc. into two corporations. The distributees (electing shareholders of Flo-Rob, Inc.) receiving Mossy Dell, Inc. shares may not transfer those shares for a period of ten years from August 1, 2009.

(AB&T's motion for summary judgment, Exhibit A, p.35 ¶ 5, docket #19.) The transfer restriction is also set forth in the Mossy Dell bylaws and is noted on its stock certificates.

Just prior to the creation of Mossy Dell, on June 12, 2009, AB&T National Bank obtained a judgment against Debtor in the Circuit Court of Jefferson County, Alabama, in the amount of $1,293,671.49. After the creation of Mossy Dell, AB&T domesticated the judgment in the Superior Court of Dougherty County, Georgia, on September 21, 2009, and obtained a fi. fa. As a result, Debtor's 4,000 shares of Mossy Dell stock were seized and, over the protestations of Mossy Dell, were sold at public sale in October 2009. AB&T was the successful bidder. Although AB&T was aware of the transfer restriction prior to the sale, it demanded Mossy Dell reissue the stock in the name of AB&T. Mossy Dell refused to do so, citing the transfer restriction.

AB&T filed suit against Mossy Dell in the Superior Court of Lee County, Georgia, to perfect its ownership in the stock. The complaint alleged that the family members and shareholders involved in the incorporation of Mossy Dell "in an effort to defraud creditors in

general and [AB&T] in particular, placed a restrictive endorsement on the stock of Mossy Dell."[2] (Notice of Removal, Complaint ¶ 7, docket #1.) Mossy Dell denied the allegation and denied that the family members were aware at the time the transfer restriction was adopted of either Debtor's financial condition or of AB&T's judgment against Debtor. Furthermore, in its motion for summary judgment, Mossy Dell contended the restriction was created to promote family harmony.[3] AB&T later filed an amended complaint adding an allegation that even if the shareholders did not intend to defraud creditors by creating the transfer restriction, the restriction is unenforceable because it is manifestly unreasonable. (AB&T National Bank's First Amendment to the Complaint, docket #14.) AB&T has also argued that the transfer restriction does not apply to involuntary transfers. In its motion for summary judgment, AB&T cited O.C.G.A. § 18-2-70 et seq. (the Uniform Fraudulent Transfers Act) as "helpful in understanding why a court of equity should not enforce the position being taken by Mossy Dell[.]" (AB&T National Bank's Motion for Summary Judgment, Exhibit A, p.73, docket #19.) However, AB&T

---

[2] When Flo-Rob was incorporated in 1972, its shares were not subject to any transfer restrictions. In 1996 it adopted a resolution that before shares could be sold to an outsider they must first be offered to the corporation and other shareholders. In 2009, simultaneous with the Mossy Dell incorporation, Flo-Rob adopted the same transfer restriction adopted by Mossy Dell.

[3] Mossy Dell's statement of undisputed facts asserts that Mossy Dell was "created for the purpose of affecting the settlement transfers and to seek peace and happiness within the family ..." (Mossy Dell's Motion for Summary Judgment, Exhibit p. 11, ¶ 12, docket #18.) However, the statement of facts does not provide any facts regarding the purpose of adopting the transfer restriction other than to state that it was not created to defraud creditors. Mossy Dell's response to AB&T's motion for summary judgment does state the transfer restriction effectuates a long-standing tradition of family ownership of assets. (Notice of Removal, p.27, Defendant's Response, docket #1.) Furthermore, Mossy Dell submitted the affidavit of Robert I. Behar, a certified public accountant who has worked for Debtor's family since 1982. His affidavit recounts conversations with Debtor in which Debtor expressed his understanding that his grandparents' assets could never be owned by nonfamily members. (Notice of Removal, p.39, Affidavit, docket #1.)

did not contend that its claim arose under that statute and did not attempt the prove the elements of that statute. In a supplemental brief, AB&T stated that while the Fraudulent Transfer Act supports its position, it is not needed to resolve the dispute.

Debtor filed a Chapter 7 petition on January 20, 2012. Although he is not a party to the state court litigation, he removed the state court case to the Bankruptcy Court claiming the shares in dispute are property of the bankruptcy estate.[4] The Chapter 7 Trustee intervened as a defendant. At issue is whether the transfer restriction on the Mossy Dell stock prohibited AB&T from levying upon Debtor's shares. AB&T and Mossy Dell both filed motions for summary judgment in the state court proceedings and have renewed those motions in the Bankruptcy Court. After considering the facts and legal arguments of the parties, the Court will grant summary judgment to AB&T.

## Conclusions of Law

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, which provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the relevant facts are undisputed. Therefore, the only question is whether the Mossy Dell transfer restriction is valid and enforceable under Georgia law such that it prevented AB&T from lawfully foreclosing on Debtor's shares of the stock.

---

[4] Under 11 U.S.C. § 541(c)(1)(A), "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law– (A) that restricts or conditions transfer of such interest by the debtor[.]"

Restrictions on the alienation of property have historically been disfavored in the law, as evidenced by such long-standing legal doctrines as the rule against perpetuities.[5] In the past, courts applied similar rules to restrictions on the transfer of corporate stock. Castriota v. Castriota, 633 A.2d 1024, 1027 (N.J. Super. 1993).

> Reluctance to enforce such restrictions was premised on the theory that a share of stock is a property right and that a restraint against transfer is antithetical to the freedom of the market place. The widespread use of stock transfer restrictions in closely held corporations has required a reappraisal of this judicial policy. In more recent times, the courts have recognized that stock in a small corporation is not merely property, that it also creates a personal relation analogous to a partnership and that the owners have reason to prevent unacceptable outsiders from acquiring an interest in the entity. Today, reasonable stock transfer restrictions have been held valid in most jurisdictions.

Id. (internal citations omitted). See also F.B.I. Farms, Inc. v. Moore, 798 N.E.2d 440, 445 (Ind. 2003).

In Georgia, certain restrictions on the transfer of shares in a corporation are authorized by O.C.G.A. § 14-2-627 (2003), which provides as follows:

> (a) The articles of incorporation, bylaws, an agreement among shareholders, or an agreement between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of the corporation. ...

---

[5] The rule against perpetuities, which prevents the remote vesting of interests in real estate, originated in the 17th Century in the Duke of Norfolk's Case, 3 Ch. Cas. 1, 22 Eng. Rep. 931 (1682). See George L. Haskins, Extending the Grasp of the Dead Hand: Reflections on the Origins of the Rule Against Perpetuities, 126 U. Pa. L. Rev. 19, 20 (1977). Although it has undergone a measure of modification over the years, it remains the law of Georgia. O.C.G.A. § 44-6-200 et seq. (2010). See also Dyer v. Dyer, 566 S.E.2d 665, 668 (Ga. 2002) ("It is the policy of the law to encourage free alienability of property, and attempts to remove either land or chattels from circulation in trade are discouraged not only by the rule against perpetuities ... but by the rule against unreasonable restraints on alienation.") (internal quotation marks and citations omitted).

>    (b) <u>A restriction</u> on the transfer or registration of transfer of shares <u>is valid and enforceable</u> against the holder or a transferee of the holder <u>if the restriction is authorized by this Code section</u> and its existence is noted conspicuously on the front or back of the certificate .... A restriction authorized under this Code section, whether or not so noted, is enforceable against a person with knowledge of the restriction.
>    (c) A restriction on the transfer or registration of transfer of shares is authorized:
>        (1) To maintain the corporation's status when it is dependent on the number or identity of its shareholders;
>        (2) To preserve exemptions under federal or state securities law;
>        (3) For any other reasonable purpose.
>    (d) A restriction on the transfer or registration of transfer of shares may:
>        (1) Obligate the shareholder first to offer the corporation or other persons (separately, consecutively, or simultaneously) an opportunity to acquire the restricted shares;
>        (2) Obligate the corporation or other persons (separately, consecutively, or simultaneously) to acquire the restricted shares;
>        (3) Require the corporation, the holders of any class of its shares, or another person to approve the transfer of the restricted shares, if the requirement is not manifestly unreasonable;
>        (4) Prohibit the transfer of the restricted shares to designated persons or classes of persons, if the prohibition is not manifestly unreasonable.

<u>Id.</u> § 14-2-627 (emphasis added).

Thus, transfer restrictions on stock in Georgia corporations that comply with the language of the statute are valid and enforceable. See <u>Brown v. Momar, Inc.</u>, 411 S.E.2d 718, 722 (Ga. App. 1991) ("As a general rule, restrictions on the transferability of stock are enforceable in this State ... and are similarly enforceable against subsequent transferees provided the restrictions are stated conspicuously on the face of the stock certificate."); <u>Taylor v. Riverside-Franklin Props., Inc.</u> (<u>In re Taylor</u>), 228 B.R. 491, 498 (Bankr. M.D. Ga. 1998) (Walker, J.) (restriction on stock owned by the corporation's employees that required the employees to sell the stock to the

corporation upon termination of employment and required the corporation to purchase the stock was valid; but the restriction was not enforceable against an entity without notice of the restriction when it was not noted on the stock certificate); <u>Davis v. Davis</u>, 419 S.E.2d 913, 914 (Ga. 1992) (where four brothers owned equal shares in a family business, a transfer restriction prohibiting the stock from being sold in a way that gave any one brother more shares than the others was violated when one brother bought out the shares of two other brothers); <u>Foster v. Ohlwiler</u>, 597 S.E.2d 481, 484 (Ga. App. 2004) (transfer restriction was not valid, in part, because it was never authenticated or adopted by the corporation).

The transfer restriction in this case provides: "The shares of [Mossy Dell] may only be transferred to lineal descendants of Flora S. Lee and her husband, Robert Lee .... The distributees (electing shareholders of Flo-Rob, Inc.) receiving Mossy Dell, Inc. shares may not transfer those shares for a period of ten years from August 1, 2009." There is no dispute that the restriction was adopted with the proper formalities–it appears in Mossy Dell's articles of incorporation, its bylaws, and is noted on its stock certificates. To be authorized by the statute, it also must, at a minimum, have been adopted for a reasonable purpose, and it must fit within one of the four categories set forth in O.C.G.A. § 14-2-627(d).

Georgia cases offer little guidance for determining whether a transfer restriction is reasonable. However, the Georgia Supreme Court has, in one case, refused to enforce a transfer restriction created to hinder collection efforts by a creditor. In <u>Bloodworth v. Sandersville Production Credit Association</u>, 262 S.E.2d 804 (Ga. 1980), the debtor's widow sought to avoid a security interest against the debtor's shares in a family corporation. When the creditor attempted to foreclose on the stock, the corporation initiated a separate lawsuit to declare the security

9

interest invalid. The corporation contended the creation of the security interest violated a transfer restriction that required notice to other shareholders. The family lost the case because the restriction had not been adopted in accordance with statutory procedures and was, therefore, void. After losing, the corporation properly enacted a new transfer restriction, over the objection of the creditor. The corporation then attempted to use the new transfer restriction to thwart the creditor's sale of its interest in the shares. Id. at 804-05. In the widow's lawsuit, the court found the new restriction inapplicable to the creditor: "Only the delay caused by this litigation has prevented SPCA from selling its security, and only the delay caused by this litigation enabled the directors to adopt the transfer restriction here in issue. A court of equity will not enforce a stock transfer restriction adopted under circumstances such as these." Id. at 806.

The court in Bloodworth did not frame any standards of reasonableness for a transfer restriction, although courts in other states have done so. In F.B.I. Farms, the court said, "A restriction is reasonable if it is designed to serve a legitimate purpose of the party imposing the restraint and the restraint is not an absolute restriction on the recipient's right of alienability." 798 N.E.2d at 447 (citing Bernard F. Cataldo, Stock Transfer Restrictions and the Closed Corporation, 37 Va. L. Rev. 229, 232-33 (1951)); see also O'Neal and Thompson's Close Corporations and LLC: Law and Practice, § 7:7 (Rev. 3d ed.). The court in FBI Farms went on to list several factors relevant to the reasonableness inquiry:

> the size of the corporation, the degree of restraint upon alienation; the time the restriction was to continue in effect, the method to be used in determining the transfer price of shares, the likelihood of the restriction's contributing to the attainment of corporate objectives, the possibility that a hostile stockholder might injure the corporation, and the probability of the restriction's promoting the best interests of the corporation.

798 N.E.2d at 447 (citing 18A Am. Jur. 2d Corporations § 683 (1985)).

According to its articles of incorporation, Mossy Dell was formed to invest in real estate and engage in any lawful business. The free alienation of its stock would not interfere with these objectives. However, Mossy Dell also was formed to divide assets held by a family corporation between two feuding branches of the family. Courts have found that restrictions imposed to retain family control of a business are "enforceable as protecting a viable interest." F.B.I. Farms, 798 N.E.2d at 448. Restrictions on the transfer of stock encourage formation of corporations "by permitting all parties to have confidence they will not involuntarily end up with an undesired co-venturer." Id.; accord Castriota, 633 A.2d at 1027. Furthermore, the comment to O.C.G.A. § 14-2-627 states that it provides "liberal treatment" of transfer restrictions "consistent with the Code's general approach of maximizing the freedom of participants in corporations to choose their own arrangements, even where they resemble those found in partnerships." O.C.G.A. § 14-2-627 (comment). Assuming the Mossy Dell transfer restriction was adopted to prevent outsiders from controlling family assets, and not solely to thwart AB&T from collecting on its judgment, it would appear to be adopted for a reasonable purpose.

However, the restriction itself must fall within one of the four categories listed in O.C.G.A. § 14-2-627(d). The statute allows restrictions that (1) require the shareholder to offer the shares to the corporation before selling them; (2) require the corporation to purchase the shares; (3) require the corporation to approve a transfer of the shares, if the approval requirement is not manifestly unreasasonble; or (4) prohibit transfer of the shares "to designated persons or classes of persons, if the prohibition is not manifestly unreasonable." Nothing in the statute's

11

language suggests that the four categories are merely examples of acceptable restrictions or that the list is otherwise nonexclusive. On the contrary, the four listed categories appear to be the only allowable types of transfer restriction under Georgia law. Such strict construction of the statute is consistent with the general policy against unreasonable restraints on alienation. See supra note 5 and accompanying text. Therefore, if the Mossy Dell transfer restriction falls outside these categories, it is not valid under Georgia law.

The Mossy Dell stock is subject to two types of transfer restriction. One restriction prohibits the original shareholders from transferring their shares for a period of ten years. Such a restriction does not fall into any of the four categories allowed by the statute and is therefore void. The other restriction prohibits the transfer of stock to any nonlineal descendants of Debtor's grandparents. This, too, falls outside the scope of allowed restrictions. The statute authorizes the corporation to exclude "designated persons or classes of persons" from purchasing the stock. Such a restriction could reasonably be used to exclude, for example, competitors or other entities with adverse interests from acquiring the stock. However, the Mossy Dell restriction does not exclude a class of persons; it does the inverse. It excludes the world, while allowing transfers to a very limited class.

Mossy Dell's restriction might be reasonable if it provided some alternative means for a shareholder to realize the value of his stock. For example, a family member restriction could be accompanied by a companion provision that would require the corporation to purchase the shares at a formula price if a shareholder wanted to sell his stock. See Taylor, 228 B.R. 491, 498 (restriction arose in an employer/employee context rather than a family context). Alternatively, the restriction could require the seller to offer the stock to the corporation or existing

shareholders prior to selling it to outsiders. See Rouse & Assoc., Inc. v. Delp, 658 A.2d 1383, 1384 (Pa. Super. 1995). Both scenarios give the shareholder a means of divesting himself of his interest in the company that is not dependent on the whims of his family while still giving the corporation and other shareholders the power to exclude undesirable parties from obtaining ownership. The statute governing transfer of shares in a statutory close corporation is illustrative.[6] O.C.G.A. § 14-2-911(a) (2003) prohibits all transfers of stock–voluntary or involuntary–not authorized by the articles of incorporation with one exception. A shareholder who has obtained a written offer to purchase his shares from a qualified third party[7] may sell to the third party provided the shareholder gives the corporation the right of first refusal. Id. § 14-2-912 (2003). Thus, even where transfers are restricted by law rather than by agreement, the law provides shareholders with a path for realizing the value of their shares.

In the case of Mossy Dell's transfer restriction, if Debtor's family were unwilling or unable to purchase his shares, the restriction would serve as an absolute prohibition on transfer. Absolute restrictions on transfer are "unreasonable and contravene public policy." Castriota, 633 A.2d at 1025. Because Debtor's ability to realize the value of his shares is solely dependent on the whims of his family, the Court concludes that the Mossy Dell restriction on transfers to nonfamily members is manifestly unreasonable.[8] As a result, the restriction in its entirety is

---

[6] The requirements for a corporation to be a statutory close corporation are set forth in O.C.G.A. § 14-2-902. Mossy Dell has not contended it is a statutory close corporation.

[7] The qualifications are designed to preserve any favorable tax characteristics of the corporation. O.C.G.A. § 14-2-912 (comment).

[8] The Court is aware of case law in which restrictions that prohibit transfer to any nonfamily members have been found to be reasonable. In F.B.I Farms, the court held as reasonable a transfer restriction that required the seller to first offer the shares to the corporation

invalid and void. It cannot be invoked to prohibit the foreclosure of the shares by AB&T or any other transfer of the shares. Because the Court has found the transfer restriction void, it need not consider whether a valid restriction applies to involuntary transfers.

For the foregoing reasons, the Court finds that AB&T is entitled to judgment as a matter of law. Therefore, the Court will grant AB&T's motion for summary judgment and deny Mossy Dell's motion for summary judgment. The Court will further order Mossy Dell to reissue the shares in dispute in AB&T's name.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

and then to other shareholders; if they refused to buy, the seller could then offer them to blood relatives. 798 N.E.2d at 448. Although the restriction was reasonable, the court concluded that it did not apply to foreclosure of the stock by a creditor. Id. at 449. In Celauro v. 4C Foods Corp., No. 600391-10, 2010 WL 5394813 (N.Y. Sup. Dec. 13, 2010), a transfer restriction was reasonable where shares could only be transferred to family members; the restriction also provided that any such transfer had to be approved by a majority of shareholders and if approval was withheld, the corporation must buy the stock. Id. at *8-9.